UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-00113-MR

| MASON WHITE HYDE-EL, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OF** |
| vs. | ) | **DECISION AND ORDER** |
| | ) | |
| ROGER VARGAS, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment. [Doc. 38].

**I.  PROCEDURAL BACKGROUND**

Pro se Plaintiff Mason White Hyde-El ("Plaintiff") is a federal prisoner currently incarcerated at JESUP Federal Correctional Institution in Jesup, Georgia. He brings this action pursuant to 42 U.S.C. § 1983 for violation of his rights under the Fourth and Sixth Amendments. [Docs. 1, 10]. Plaintiff claims that, in applying for and obtaining a warrant to arrest Plaintiff on state drug charges, Defendant Vargas provided false information to the Magistrate Judge and that Defendant lacked probable cause to arrest Plaintiff. [Doc. 10 at 1]. Plaintiff also claims that the arrest warrant Defendant Vargas obtained was unsupported by oath or affirmation. [Id. at 2]. For injuries, Plaintiff

claims that he was "deprived of his freedom and liberties" by being placed on a $25,000.00 secured bond and that he lost his house and car and suffered emotional distress. [Doc. 10 at 2]. Plaintiff requests no particular relief in this action. [See id.].

On initial review of Plaintiff's Complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court found that it appeared that Plaintiff's Complaint was barred by Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), and Younger v. Harris, 401 U.S. 37, 43-44 (1971), and ordered Plaintiff to amend his Complaint to show that it was not barred. [Doc. 9]. Plaintiff timely amended his Complaint, alleging that the charges for which he was allegedly wrongfully arrested were voluntarily dismissed and that the relevant state criminal proceeding is no longer pending. [Doc. 10 at 1]. The Court, therefore, allowed Plaintiff's Amended Complaint to pass initial review. [Doc. 11].

On May 7, 2021, Defendant Vargas moved for summary judgment of Plaintiff's Complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure. [Doc. 38]. Defendant argues that summary judgment should be granted because Defendant did not violate Plaintiff's constitutional rights; Defendant is entitled to qualified immunity; and because Plaintiff failed to

2

Case 3:20-cv-00113-MR   Document 52   Filed 01/19/22   Page 2 of 17

exhaust administrative remedies before filing suit.[1] In support of his summary judgment motion, Defendant submitted a memorandum; a Statement of Material Facts; the Magistrate's Order setting the conditions of Plaintiff's bond in state court; various records from a federal drug prosecution of Plaintiff in the Middle District of North Carolina; and the Affidavits of Roger Vargas and Kevin Black. [Docs. 39, 40, 41-1 to 41-6].

On May 24, 2021, this Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 42]. Plaintiff timely responded to Defendant's motion. [Doc. 44]. He submitted a brief, his own Statement of Material Facts and Affidavit, documents from the state criminal proceedings, and select discovery responses by Defendant. [Id.]. In his Affidavit, Plaintiff also incorporated by reference his Complaint, Amended Complaint and attached Brief, and Statement of Material Facts. [Doc. 44 at 31]. Defendant replied to Plaintiff's response, addressing various

---

[1] While the record affirmatively shows that Plaintiff did not exhaust his administrative remedies before filing this action, [Doc. 1 at 2; Doc. 5], Defendant failed forecast evidence on this issue in a form acceptable here, [see Doc. 39 at 25]. Because dismissal based on the failure to exhaust administrative remedies is without prejudice, the Court would address the merits in this case in any event and, therefore, declines to further address this issue. See Dillard v. Anderson, No. 2:13-CV-31-FDW, 2010 WL 9553022, at *2 n.2 (W.D.N.C. Sept. 6, 2010) (Whitney, C.J.). ("A dismissal for failure to exhaust administrative remedies is without prejudice.").

3

arguments made by Plaintiff. [Doc. 45]

The matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat

4

a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To that end, only evidence admissible at trial may be considered by the Court on summary judgment. Kennedy v. Joy Technologies, Inc., 269 Fed. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986)

5

> (footnote omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott, 550 U.S. at 380, 127 S.Ct. at 1776.

## III. FACTUAL BACKGROUND

The relevant forecast of evidence in the light most favorable to Plaintiff is as follows.

Defendant Vargas has been a Deputy Sheriff for Iredell County, North Carolina, since 2014. [Doc. 41-5 at ¶ 2: Vargas Aff.]. During the spring and summer of 2019, Defendant Vargas was in charge of conducting an investigation into Plaintiff's drug activity. [Id. at ¶ 3]. During the same time frame and unbeknownst to Defendant Vargas, Kevin Black, a Deputy Sheriff for Rowan County, North Carolina, was also conducting an investigation into Plaintiff's drug activity.[2] [Doc. 41-6 at ¶¶ 2-3: Black Aff.]. Black, who is currently a Lieutenant, has 26 years of law enforcement experience,

---
[2] Iredell County and Rowan County about one another, but Iredell County is situated in the Western District and Rowan County is situated in the Middle District.

including 23 years in narcotics enforcement. Lieutenant Black has been a sworn Taskforce Officer (TFO) with the United States Department of Homeland Security since 2006. [Id. at ¶ 2].

Lieutenant Black learned Plaintiff's identity from TFO D. Barnes of the Alexander County Sheriff's Office. TFO Barnes arrested an individual on drug charges who told Barnes that he, the arrestee, regularly brought drugs from Plaintiff. [Id. at ¶ 4]. On May 7, 2019, Lieutenant Black supervised the first of five drug buys from the Plaintiff by undercover officers with the Rowan County Sheriff's Office (RCSO) and its confidential informants (CIs). [Id. at ¶¶ 6-10]. The last of these buys occurred on July 12, 2019, the day Plaintiff was arrested. [Id. at ¶ 10].

On July 1, 2019, the Iredell County Sheriff's Office, under Defendant Vargas' direction, coordinated a drug enforcement operation in Statesville, North Carolina, in which Lieutenant G. B. Toney,[3] another Deputy Sheriff, along with a CI, purchased heroin from Plaintiff. [Doc. 41-5 at ¶ 4]. On Plaintiff's request, Lieutenant Toney met Plaintiff in a Sheetz gas station's bathroom. [Id. at ¶¶ 4, 5]. Lieutenant Toney gave Plaintiff $200 in cash in exchange for a small plastic bag of a substance later confirmed to be heroin.

---

[3] The record inconsistently refers to Toney as Lieutenant and Sergeant. [See Doc. 41-5]. The Court adopts the Lieutenant designation for purposes of this Order only.

[Id. at ¶ 5; id. at 6]. Law enforcement conducted physical and technical surveillance throughout the operation. [Id. at ¶ 5]. After the transaction, Sergeant Toney met with Defendant Vargas to turn over the heroin sold by Plaintiff. [Id.].

During course of the investigation, Defendant Vargas spoke with Lieutenant Black. [Id. at ¶ 6]. Lieutenant Black informed Defendant Vargas of the RCSO investigation of the Plaintiff's drug activity. [Id.]. Thereafter, Defendant Vargas decided to discontinue his investigation and allow the RCSO to pursue its investigation. [Id.]. After Plaintiff's arrest by the RCSO, he was taken to the Rowan County Magistrate's Office. [Doc. 41-6 at ¶ 12]. There, Lieutenant Black gave a sworn, oral statement of facts regarding his investigation of Plaintiff to the magistrate. [Id.]. After hearing Lieutenant Black's statement, the magistrate found probable cause to charge Plaintiff with trafficking heroin, conspiracy to traffic heroin, maintaining a dwelling for the purposes of drug activity, and possession of a firearm by a felon. Plaintiff was placed under a $500,000 bond and held at the Rowan County Detention Center. [Id.].

On August 21, 2019, Defendant Vargas appeared before Iredell County Magistrate M. C. Nethken and gave sworn, oral testimony regarding the July 1, 2019 drug transaction between Plaintiff and Lieutenant Toney.

8

Case 3:20-cv-00113-MR   Document 52   Filed 01/19/22   Page 8 of 17

[Doc. 41-5 at ¶ 7; Doc. 44 at 32]. After hearing Defendant Vargas' statement, the magistrate found probable cause to charge Plaintiff with possession with intent to sell and deliver a Schedule I controlled substance and with the unlawful sale of a Schedule I controlled substance on July 1, 2019. [Doc. 41-5 at ¶ 7]. On August 28, 2019, a Rowan County Deputy Sheriff served Plaintiff with the arrest warrant and took Plaintiff before a magistrate. Plaintiff was placed under a $25,000.00 secured bond. [Id. at ¶ 8].

On September 9, 2019, the RCSO provided Plaintiff's case summary to the United States Attorney's Office for prosecution. On October 28, 2019, Plaintiff was indicted in the United States District Court for the Middle District of North Carolina on eight counts related to his possession and sale of heroin. [Doc. 41-6 at ¶ 14]. The Rowan County charges based on the same illegal drug transactions were dismissed as duplicative of the federal charges. [Id.]. In or around November 2019, the Iredell County District Attorney's Office agreed to dismiss the charges against Plaintiff pending there since Plaintiff had been indicted on similar charges in federal court. [Doc. 41-5 at ¶ 9; Doc. 45-1 at ¶ 3].

On February 18, 2020, after losing a suppression motion, Plaintiff decided to plead guilty to the federal charges. [Doc. 41-6 at ¶ 15]. He pleaded guilty to Count One of the Indictment for conspiracy to distribute

heroin in exchange for the dismissal of the remaining counts. [Doc. 41-6 at ¶ 16; see Criminal Case No. 1:19-cr-00548-NCT-1 ("CR"), 2/18/2020 Docket Entry]. Plaintiff was sentenced to a term of 70 months' imprisonment and final judgment was entered on August 21, 2020. [CR Doc. 92, Doc. 41-6 at ¶ 16].

## IV. DISCUSSION

### A. Fourth Amendment

Plaintiff claims that his Fourth Amendment rights were violated because the Iredell County arrest warrant Defendant Vargas applied for was not supported by "Oath or Affirmation" because there was no written complaint or affidavit or recorded sworn testimony showing probable cause to arrest Plaintiff. Plaintiff further claims that Defendant Vargas provided false information to the magistrate because Plaintiff did not sell drugs to Sergeant Toney.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons … against unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; see generally Graham v. Connor, 490 U.S. 386, 396 (1989). Because an arrest

amounts to a Fourth Amendment seizure, probable cause is necessary for an arrest to be lawful. See Henderson v. Simms, 223 F.3d 267, 272 (4th Cir. 2000); see also Draper v. United States, 358 U.S. 307, 310-11, 79 S.Ct. 329 (1959).

Probable cause is determined by a "totality-of-the-circumstances" approach. Illinois v. Gates, 462 U.S. 213, 230, 103 S.Ct. 2317 (1983). "While probable cause requires more than bare suspicion, it requires less than that evidence necessary to convict." United States v. Gray, 137 F.3d 765, 769 (4th Cir. 1998) (internal quotation marks omitted). "It is an objective standard of probability that reasonable and prudent persons apply in everyday life." Id. "A court should only consider the information the officers had at the time they sought the warrant." Smith v. Munday, 848 F.3d 248, 253 (4th Cir. 2017) (citation omitted).

"It is settled law in this Circuit that the 'Fourth Amendment does not require that the basis for probable cause be established in a written affidavit; it merely requires that the information provided the issuing magistrate be supported by "Oath or affirmation."'" Antonio v. Moore, 174 Fed. App'x 131, 136 (4th Cir. 2006) (quoting United States v. Clyburn, 24 F.3d 613, 617 (4th Cir. 1994) (quoting U.S. Const. amend. IV)). Moreover, North Carolina law

11

parrots this standard, plainly allowing an arrest warrant to issue on oral oath or affirmation. North Carolina General Statute § 15A-304(d) provides:

> A judicial official may issue a warrant for arrest only when he is supplied with sufficient information, supported for oath or affirmation, to make an independent judgment that there is probable cause to believe that a crime has been committed and that the person to be arrested committed it. The information must be shown by one or both of the following:
>
> (1) Affidavit.
>
> (2) Oral testimony under oath or affirmation before the issuing official.

N.C.G.S. § 15A-304(d).

Accordingly, Plaintiff's claim that his Fourth Amendment rights were violated because Defendant Vargas' statement was not written or recorded easily fails. The Fourth Amendment is satisfied by oral sworn testimony such as that given by Defendant Vargas.[4] Plaintiff's claim based on allegedly false information provided by Defendant Vargas to the magistrate also fails. The forecast of evidence does not show that Defendant Vargas had any reason to doubt the information provided by Lieutenant Toney. Lieutenant Toney, under constant surveillance by other law enforcement, reportedly engaged

---

[4] There is also, therefore, no right, contrary to Plaintiff's contentions, that he be provided an affidavit, complaint, or recorded testimony from a probable cause hearing so that he might confront or cross-examine Defendant Vargas' statement.

in a hand-to-hand drug transaction with Plaintiff in a gas station bathroom in the presence of a CI. The drugs obtained from Plaintiff during this transaction were tested shown to be heroin. The forecast of evidence shows only that Defendant Vargas reported the information from the drug enforcement operation to the magistrate who determined there was probable cause for an arrest. Plaintiff, therefore, has failed to show Defendant Vargas knew the information Vargas reported was false and, therefore, failed to show that Defendant Vargas violated Plaintiff's rights. Because there is no issue for the jury on Plaintiff's Fourth Amendment claim, the Court will grant Defendant's motion for summary judgment on this claim.

## B. Sixth Amendment

Plaintiff claims that his Sixth Amendment rights were violated by Defendant Vargas' provision of false information to the magistrate, the arrest warrant being unsupported by "Oath or affirmation," and the lack of probable cause for Plaintiff's arrest. [Doc. 10 at 2]. Plaintiff further claims that these circumstances left him "without any means to confront/cross-examine Roger Vargas' accusations." [Doc. 10-1 at 3].

Plaintiff misunderstands the protections of the Sixth Amendment. It provides:

> In all criminal prosecutions, the accused shall enjoy the right … to be informed of the nature and cause of

> the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

U.S. Const. amend. VI.

The Sixth Amendment does not apply to probable cause hearings. A potential arrestee has no right to counsel or to confront witnesses in a magistrate's determination of whether there is probable cause to arrest him in the first place. Rather, "[t]he right to confrontation is basically a trial right. It includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness." <u>Barber v. Page</u>. 390 U.S. 719, 725, 88 S. Ct. 1318, 1322 (1968).

In sum, there is no forecast of evidence of any violation of Plaintiff's Sixth Amendment rights. Because there too lies no issue for trial on this claim, it will also be dismissed.

### C. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." <u>Henry v. Purnell</u>, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether

that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Because Plaintiff has not forecasted evidence that Defendant Vargas violated a constitutional right, Defendant Vargas is entitled to qualified immunity on Plaintiff's individual capacity claims against him. As such, the Court grants summary judgment on this ground as well.

### D. Official Capacity Claims

To the extent Plaintiff intended to sue Defendant Vargas in his official capacity, the Court addresses the issue. Suits against an officer in his official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165, 105 S. Ct. 3099 (1985) (1985) (quoting Monell v Dep't of Soc. Servs. Of the City of New York, 436 U.S. 658,690 n. 55, 98 S. Ct. 2018 (1978)). The Office of Sheriff is not liable under § 1983 for an employee's acts "unless action pursuant to official municipal policy of some nature caused [the]

constitutional tort." Collins v. City of Harker Heights, 503 U.S. 115, 120-21, 112 S. Ct. 1061, 1066 (quoting Monell, 436 U.S. at 691, 98 S. Ct. at 2036). That is, "[f]or a governmental entity to be liable under section 1983, the official policy must be the moving force of the constitutional violation." Moore v. City of Creedmoor, 345 N.C. 356, 366, 481 S.E.2d 14, 21 (1997) (internal quotation marks and citations omitted). "Thus, the entity's 'policy or custom' must have played a part in the violation of federal law." Id. (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38 (1978)).

Here, there is no forecast of evidence that the alleged constitutional violations were caused by an official custom or policy of the Office of Sheriff. Rather, Plaintiff's forecast of evidence focuses on the acts of Defendant Vargas only. As such, to the extent Plaintiff sought to sue Defendant Vargas in his official capacity, these claims are dismissed.

## V. CONCLUSION

For all the foregoing reasons, Defendant's motion for summary judgment is granted.

## O R D E R

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Summary Judgment [Doc. 38] is **GRANTED** and this action is **DISMISSED with prejudice**.

16

Case 3:20-cv-00113-MR   Document 52   Filed 01/19/22   Page 16 of 17

The Clerk is respectfully instructed to terminate this action.

**IT IS SO ORDERED**.

Signed: January 19, 2022

Martin Reidinger
Chief United States District Judge